**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **DONALD S. CAMPBELL,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 13-1894** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM OPINION GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Donald S. Campbell ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 12) and Defendant's Motion for Summary Judgment (ECF No. 14).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## <u>Background</u>

Plaintiff was born in 1959, has a high-school education, and previously worked as a mover and cleaner.  R. at 16, 113.  Plaintiff applied for DIB protectively on June 7, 2010, and for SSI on June 17, 2010, alleging disability beginning on March 20, 2010, due to right-side immobility and pain in the right shoulder.  R. at 10, 82-90, 107, 145.  The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 28-38, 41-46.  On January 19, 2012, ALJ Eugene Bond held a hearing at which Plaintiff and a vocational expert ("VE") testified.  R. at 18-27.  On February 29, 2012, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability of March 20, 2010.  R. at 7-17.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on April 24, 2013.  R. at 1-6.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On June 28, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

**A.     Mohammad Naficy, M.D. (Prince George's Hospital Center)**

In reviewing the medical evidence of record, the ALJ stated in his decision:

The medical evidence of record reveals that [Plaintiff] presented to the hospital in March 2010 complaining of shortness of breath upon exertion. A CT Angiography of [Plaintiff's] chest diagnosed a right-sided pneumothorax, extensive apical bilateral blebs, extensive airspace opacity in the right lung, and subcutaneous emphysema on the right. On March 26, 2010, [Plaintiff] underwent a right thoracotomy and resection of the blebs, pleurodesis, and insertion of a chest tube with intercostals nerve blocks. Following surgery, testing demonstrated no active lung [or] pleural space disease.

In terms of [Plaintiff's] post-operative complaints of pain and shortness of breath, the record is very limited. In June 2010, [Plaintiff] complained to his cardiologist, Mohamad [sic] Ali Nacify [sic], M.D. of right shoulder and chest pain, for which [Plaintiff] was sent to physical therapy. In September 2010, Dr. Nacify [sic] noted that [Plaintiff] was doing well. In October 2010, [Plaintiff] continued to complain of right shoulder pain. A CT of [Plaintiff's] thorax in November 2010 demonstrated no active lung or pleural space disease, but noted bilateral blebs with bullous and cystic changes in the left apex. The evidence indicates that [Plaintiff] did not return to Dr. Nacify [sic] until June 2011 when he reported pain on the right chest wall near his incision. [Plaintiff] made similar complaints in November 2011. A chest x-ray in November 2011 again revealed no active infiltrates, but noted the continued presence of bulla in the left lung apex.

R. at 14-15 (citations omitted); *see* R. at 153-92, 255-89, 331-45.

In a letter dated April 15, 2010, Dr. Naficy stated:

We are writing to inform you [Plaintiff] has been under my care since March 22, 2010. He has had major surgery by us on March 26, 2010 at Prince George's Hospital. He has to come in for another appointment in a month and at that time we will determine if he's able to return to work. Effective April 15, 2010 he is unable to work.

R. at 345.

3

**B.**     **Ikechi Fred Okwara, M.D.**

The ALJ noted the following in his decision:

> In September 2010, [Plaintiff] attended a consultative examination performed by Ikechi Fred Okwara, M.D.  At that time, [Plaintiff] complained of right-sided chest numbness, right-sided pain, and occasional shortness of breath. On examination, [Plaintiff] demonstrated tenderness at the incision site on the right chest wall and in the right shoulder with decreased range of motion in the right shoulder, normal grip strength, and full range of motion in the right elbow and wrist.  Pulmonary function testing indicated the presence of moderate obstructive airway disease.

R. at 15 (citation omitted); *see* R. at 227-38.  Dr. Okwara's diagnoses included (1) status post right thoracotomy secondary to pneumothorax; (2) history of pneumothorax; (3) right shoulder pain, suspect secondary to tendinitis of the rotator cuff; and (4) right chest wall pain secondary to postoperative wound incision.  R. at 238.

**C.**     **State Agency Medical Consultants**

On October 7, 2010, Jim Takach, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 243-50.  Dr. Takach opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) reach occasionally overhead with the right upper extremity.  R. at 244.  In addition to Plaintiff's manipulative limitation of occasional overhead reaching, he could occasionally climb, balance, stoop, kneel, crouch, and crawl.  R. at 245-46.  Plaintiff's environmental limitations included avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  R. at 247.  Plaintiff had no visual or communicative limitations, however.  R. at 246-47.  On January 26, 2011, another state agency medical consultant, M. Feld, M.D., affirmed Dr. Takach's opinion.  R. at 290.

**D.    Hearing Testimony**

**1.    Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's testimony as follows:

> [Plaintiff] initially alleged disability based on pain in the right shoulder and immobility of his right side.  At the hearing, [Plaintiff] testified that since his alleged onset date, he becomes winded, which limits his ability to walk and engage in other activities.  He reported that he drives only on a limited basis because the seatbelt gives him problems.  [Plaintiff] alleged that on an average day, he showers, prepares breakfast with his mother, reads the paper, watches television, takes a nap, sits on the porch, eats dinner, and checks on his mother. He indicated that his mother does the cooking and cleaning and that they go to the grocery store together.
>
> In connection with his application for disability benefits, [Plaintiff] completed two function reports in which he endorsed his ability to prepare meals, walk for 1 to 2 blocks at one time, take care of his personal care, watch television, drive, shop, and perform household chores including vacuuming the floor, mopping, ironing, watering flowers, and cleaning the bathroom.  Despite the ability to perform these activities, [Plaintiff] also noted that he was unable to use his right arm without experiencing sharp pain.

R. at 14 (citation omitted); *see* R. at 21-24, 106-12, 120-27, 137-44.

**2.    VE Testimony**

According to the VE, jobs in the national economy available to a hypothetical person with Plaintiff's same age, education, work experience and the RFC to perform unskilled, light work[2] with a sit/stand option and limited dominant hand usage include mail clerk, router, and office helper.  R. at 25-26.  If such a person's job performance fell 15% "below the productivity requirement due to naps, due to missing time, due to resting," then it would not be considered substantial gainful activity.  R. at 26.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*

### III

### Summary of ALJ's Decision

On February 29, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of March 20, 2010; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a mail clerk, router, or officer helper.  R. at 12-17.  The ALJ accordingly found that he was not disabled from March 20, 2010, through the date of the decision.  R. at 17.

In so finding, the ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to unskilled work with a sit-stand option and limited dominant hand usage."  R. at 13.  The ALJ considered Plaintiff's "limited treatment history, the objective clinical findings, [Plaintiff's] subjective complaints, and all of the medical opinions and evidence of record."  R. at 16.

The ALJ found that Plaintiff's severe impairments included moderate obstructive airway disease and right chest and shoulder pain status post thoracotomy.  R. at 12.  Specifically considering §§ 1.00 and 3.00 relating to the musculoskeletal and respiratory systems, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  R. at 13.

Further, regarding Plaintiff's credibility, the ALJ found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his]

statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." R. at 14.

The ALJ also weighed the opinion evidence in the record, giving (1) "great weight" to the opinions of the state agency medical consultants "to the extent that they are consistent with the medical evidence of record" and (2) "little weight" to Dr. Naficy's opinion.  R. at 15-16. Specifically, the ALJ found the following:

> The undersigned notes that the record does not contain any specific [RFC] assessments from any treating or examining physicians.  Less than one month following [Plaintiff's] extended hospitalization, [Plaintiff's] treating physician Mohamad [sic] Ali Naficy, M.D., stated that effective April 15, 2010, [Plaintiff] was unable to work.  The doctor further noted that [Plaintiff's] work status would be redetermined at his next appointment.  The undersigned notes that the opinion on an individual's ultimate ability to work is an issue reserved to the Commissioner.   In addition, Dr. Naficy's next progress note reveals that [Plaintiff] was released from regular care with instructions to return as needed. Subsequent treatment notes from this provider fail to reveal the type of significant clinical and laboratory abnormalities one would expect if [Plaintiff] were in fact disabled and unable to work.

R. at 15 (citations omitted).

## IV

## **Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the

region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[3]

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age,

education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).

The Commissioner must prove not only that the claimant's RFC will allow the claimant to make

an adjustment to other work, but also that the other work exists in significant numbers in the

national economy.  *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not

disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will

find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct

legal standards and whether the factual findings are supported by substantial evidence.  *See*

*Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is

not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the

relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42

U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not

conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.

1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

## <u>Discussion</u>

Plaintiff maintains that the ALJ erroneously assessed his RFC. Pl.'s Mem. Supp. Mot. Summ. J. 3-8, ECF No. 12-1. He further asserts that the ALJ erroneously relied upon the VE's testimony. *Id.* at 8-9. Plaintiff finally contends that the ALJ failed to develop properly the administrative record. *Id.* at 9-11.

## A.      ALJ's RFC Assessment

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[4] ("SSR") 96-8p. Pl.'s Mem. Supp. Summ. J. 3-6, ECF No. 12-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). In particular, he maintains that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." *Id.* at 6. Thus, according to Plaintiff, the ALJ's RFC assessment "defies review." *Id.* The Commissioner

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

asserts, on the other hand, that "the ALJ explicitly supported his RFC assessment with a narrative discussion of all the relevant evidence, such as [Plaintiff's] allegations, the medical treatment records in evidence, the findings on consultative examination, and the medical opinions, including those of the State agency medical consultants." Def.'s Mem. Supp. Summ. J. 10, ECF No. 14-1 (citing R. at 14-16). As discussed further below, Plaintiff's argument is unavailing.

Plaintiff first maintains that,

> [w]hile the [ALJ] did set forth [an RFC] assessment, [the ALJ] . . . failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence. The [ALJ] provided no explanation to support his determination that the Plaintiff was limited to unskilled work, provided no explanation to support his determination that the Plaintiff was limited to light work, provided no explanation to support his determination that the Plaintiff required a sit/stand option, and provided no explanation to support his determination that the Plaintiff required occupations with limited dominant hand usage.

Pl.'s Mem. Supp. Summ. J. 6, ECF No. 12-1.

"In making an RFC finding, the ALJ is under an obligation to 'include a narrative discussion describing how the evidence supports each conclusion, *citing specific medical facts and non-medical evidence.*'" *Lehman v. Astrue*, 931 F. Supp. 2d 682, 695 (D. Md. 2013) (alteration in original) (quoting SSR 96-8p). "While the precise medical evidence relied on for every specific limitation need not be discussed directly in the actual RFC finding, the Court must not be required to speculate as to the bases for the findings." *Vandervort v. Astrue*, Civil Action No. TMD 10-02671, 2013 WL 508987, at *2 (D. Md. Feb. 11, 2013).

Here, the Court has reviewed the ALJ's opinion and finds it to be thorough and detailed. Contrary to Plaintiff's argument, the ALJ did provide a narrative discussion to support his RFC assessment and "considered all symptoms and the extent to which these symptoms can

reasonably be accepted as consistent with the objective medical evidence and other evidence." R. at 13. The ALJ reviewed Plaintiff's reported activities of daily living and his hearing testimony to find his "statements concerning the intensity, persistence and limiting effects of [his] symptoms . . . not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." R. at 14. Plaintiff has not disputed the ALJ's proper consideration of his reported daily living activities in determining his credibility, *see Johnson*, 434 F.3d at 658; *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam), and so he has waived this argument. *See United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002).

The ALJ also discussed the medical evidence of record, including Dr. Naficy's treatment notes (R. at 15, 331-45), Dr. Okwara's examination in September 2010 (R. at 15, 235-38), and the opinions of the state agency medical consultants (R. at 15-16, 243-50, 290), before assigning "great" weight to the state agency medical opinions and "little" weight to Dr. Naficy's opinion (R. at 15, 345). The ALJ noted that the record did not contain any RFC assessments from any treating or examining physicians. R. at 15. The ALJ further found that Dr. Naficy's opinion that Plaintiff was unable to work as of April 15, 2010 (R. at 345) was not a medical opinion, but an opinion on an issue reserved to the Commissioner and thus not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Thompson v. Astrue*, 442 F. App'x 804, 808 (4th Cir. 2011) (per curiam) ("Rather than providing a reasoned explanation, [the treating physician] simply opined in his conclusory fashion that [the claimant] was 'permanently and totally disabled' and 'will never be able to perform substantial gainful work activity.' Thus, [the treating physician's] letter more closely resembled an opinion on a matter reserved to the Commissioner than a medical opinion."). As for the opinions of the state agency consultants, "the testimony of a non-examining physician can be relied upon when it is

consistent with the record.  Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." *Smith*, 795 F.2d at 346 (citation omitted); *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").  Contrary to Plaintiff's contention, the Court need not guess at the basis for the ALJ's RFC assessment.  *See Finch ex rel. Finch v. Astrue*, Civil Action No. TMD 08-2706, 2012 WL 748383, at *3 (D. Md. Mar. 6, 2012) ("Plaintiff argues that the ALJ failed to set forth a narrative discussion setting forth how the evidence supports each finding within the RFC, failed to discuss the Plaintiff's ability to perform work-sustained activities in an ordinary work setting on a regular and continuing basis and failed to discuss the maximum amount of each work-related activity she was capable of performing.  Plaintiff fails to set forth *any* specific argument and points to no medical evidence that would change the RFC.").

Plaintiff further contends that, although the ALJ gave "great" weight to the opinions of the state agency medical consultants, the ALJ placed no limitation on Plaintiff's abilities to sit, stand, walk, push or pull, perform postural movements, or to reach overhead.  Pl.'s Mem. Supp. Summ. J. 6, ECF No. 12-1.  The burden is on the party attacking an agency's determination to show that prejudice resulted from the error, however.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required when the alleged error 'clearly had no bearing on the

14

procedure used or the substance of [the] decision reached.'" (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964))).

Here, although the ALJ must articulate the reasons for crediting one doctor's opinion over another's, *see Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987), and must describe the weight given to the opinions of state agency medical consultants, *see* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii), "nothing requires the ALJ to provide reasons for failing to adopt certain limitations identified by the state agency consultants as [Plaintiff] suggests. Failing to adopt all limitations also does not indicate that those limitations were not considered." *Nicolls v. Astrue*, 874 F. Supp. 2d 785, 802 (N.D. Iowa 2012). "Therefore, the ALJ did not err by failing to include every limitation identified by the state agency consultant[]" in his RFC assessment. *Id.*; *see McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) ("[W]e do not require an ALJ to mechanically list and reject every possible limitation.").

Further, even if the ALJ had erred in omitting the limitations mentioned above, "this error does not, as the plaintiff argues, require remand." *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 837 (N.D.W. Va. 2009). Remand is not required where, despite the ALJ's error, the ALJ would have reached the same result notwithstanding his error. *Id.* (citing *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994)). Even if the ALJ had included in his RFC assessment the postural, manipulative, and environmental limitations as opined by Dr. Takach, "there is no indication that the ALJ would have reached a different conclusion regarding the availability of jobs in the national and regional economies." *Id.*; *see* SSR 85-15, 1985 WL 56857, at *6-8 ("Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. . . . If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary

and light occupational base is virtually intact. . . . [L]imitations on the ability to crawl would be

of little significance in the broad world of work.  This is also true of kneeling (bending the legs at

the knees to come to rest on one or both knees). . . . Where a person has a medical restriction to

avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be

minimal because most job environments do not involve great noise, amounts of dust, etc.”); SSR

83-14, 1983 WL 31254, at *2 (“Relatively few jobs in the national economy require ascending or

descending ladders and scaffolding. . . . [T]o perform substantially all of the exertional

requirements of most sedentary and light jobs, a person would not need to crouch and would

need to stoop only occasionally (from very little up to one-third of the time, depending on the

particular job).”).  In fact, Plaintiff points to nothing in the *Dictionary of Occupational Titles* that

likely would change the VE’s testimony regarding the availability of the jobs of mail clerk,

router, and office helper in light of the above omitted limitations, including Plaintiff’s

environmental limitation.[5]

Moreover, despite Plaintiff’s assertion that the ALJ’s RFC assessment regarding “limited

dominant hand usage” was “so vague so as to be meaningless” (Pl.’s Mem. Supp. Summ. J. 8,

ECF No. 12-1), the VE testified that, with regard to the jobs of mail clerk, router, and office

helper, “the non-dominant hand can pick up the slack for whatever the dominant hand is limited

in” (R. at 26).  *Cf. McKenzie v. Colvin*, Civil No. TMD 13-1026, 2014 WL 3955588, at *3 (D.

Md. Aug. 12, 2014) (testimony by VE that individual avoiding, *inter alia*, lifting above shoulder

---

[5] “The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs.” *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).  “Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption.” *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

or constant reaching with left dominant upper extremity could perform light, unskilled jobs of routing clerk or general office helper). Furthermore, Plaintiff fails to demonstrate prejudice from the ALJ's claimed error in failing to explain a sit-stand option or in mistakenly limiting Plaintiff's usage of his hand in his RFC assessment, as these limitations were more restrictive than Dr. Takach's RFC assessment and thus more favorable to Plaintiff.

Plaintiff further contends that the ALJ failed to include in the RFC assessment any limitation related to his moderate obstructive airway disease, which the ALJ found to be severe. Pl.'s Mem. Supp. Mot. Summ. J. 7-8, ECF No. 12-1. As noted in Part IV above, the Commissioner determines at step two of the five-step sequential evaluation process whether the claimant has a medically severe impairment or combination of impairments. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98); *see Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (per curiam) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement."). Accordingly, "[t]he findings that the [Commissioner] must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012). "At step four, on the other hand, the [Commissioner] must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Id.* "It is possible, therefore, for [the Commissioner] to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.*; *see Walker v. Colvin*, No. C13-3021-MWB, 2014 WL 1348016, at *7 (N.D. Iowa Apr. 3, 2014) ("A finding of a severe impairment at Step Two does not require

the ALJ to provide related functional limitations at Step Four."). Here, the ALJ noted that testing of Plaintiff's pulmonary function revealed moderate obstructive airway disease, but also noted that Plaintiff did not describe any functional limitations from his symptoms. R. at 15. Accordingly, the ALJ did not err at steps two and four. For the reasons stated above, substantial evidence supports the ALJ's RFC assessment.

Plaintiff's argument that the ALJ erroneously relied upon the VE's testimony because the ALJ failed to include all of his limitations in his hypothetical question to the VE likewise is unavailing. "Because the ALJ's residual-functional-capacity determination is supported by substantial evidence and because the challenged hypothetical question merely incorporated that determination, the ALJ committed no error." *Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006) (per curiam).

**B.     ALJ's Duty to Develop Record**

Plaintiff finally contends that, because the administrative hearing lasted ten minutes, the ALJ "failed in his duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and so failed to develop properly the administrative record. Pl.'s Mem. Supp. Mot. Summ. J. 10-11, ECF No. 12-1 (relying on *Walker v. Harris*, 642 F.2d 712 (4th Cir. 1981)). Defendant maintains, however, that Plaintiff has demonstrated no prejudice from any alleged gaps in the record. Def.'s Mem. Supp. Mot. Summ. J. 18, ECF No. 14-1. For the reasons stated below, Plaintiff's contention is without merit.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). In cases where the claimant is not represented by counsel, "[w]here the ALJ fails in his

duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980). "The length or brevity of a benefits hearing . . . is not dispositive of whether or not the ALJ has met his or her obligation to adequately develop the record." *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993). The more important inquiry is whether the ALJ asked sufficient questions to ascertain (1) the nature of a claimant's alleged impairments, (2) what ongoing treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities. *Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992). "[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). "Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id.*

In this case, the ALJ inquired at the hearing about the nature of Plaintiff's alleged impairments and his daily living activities. R. at 22-23. In response to one of his attorney's questions about his past medical treatment, Plaintiff testified about the effect of his impairments on his ability to walk. R. at 24. Exhibits in the record elaborated on Plaintiff's impairments and how they allegedly affected his activities and exertional limitations. R. at 118, 120-27, 137-44, 149. Plaintiff thus fails to demonstrate how further questioning, a longer hearing, or a fuller record reasonably would have led to a different decision. *Cf. Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980). In this case, where Plaintiff was represented by counsel who had the opportunity to inquire into the issues requiring further development, the Court concludes that the ALJ

19

satisfied his duty to develop the record.  *Cf. Walker*, 642 F.2d at 714 (holding that claimant suffered clear prejudice from absence of counsel and from ALJ's passive role); *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 276 (D. Md. 2003) ("[W]here absence of counsel creates clear prejudice or unfairness to claimant, a remand to the [Commissioner] is proper.").

In short, substantial evidence supports the decision of the ALJ, who applied the correct legal standards in this case.  Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**.  Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**.  The Commissioner's decision is **AFFIRMED**.  A separate order shall issue.


Date: December 22, 2014                    _____/s/_____
                                           Thomas M. DiGirolamo
                                           United States Magistrate Judge